IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| United States of America,<br><br>                Plaintiff,<br><br>   v.<br><br>$663,150.98 in U.S. Currency seized from JP Morgan Chase Bank, account ending in "9135," such account held in the name of Qishen Trading Limited,<br><br>                Defendant *in Rem*. | No. 1:24-CV- |

## **VERIFIED COMPLAINT FOR FORFEITURE IN REM**

Pursuant to Supplemental Rule G(2) of the Federal Rules of Civil Procedure, the United States of America alleges this *in rem* complaint for forfeiture against $663,150.98 in U.S. Currency seized from JP Morgan Chase Bank, account ending in "9135," such account held in the name of Qishen Trading Limited ("Defendant Property"):

## **NATURE OF THE ACTION**

1. This is a forfeiture action under 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C). The United States seeks the forfeiture of the Defendant Property under 18 U.S.C. § 981(a)(1)(A) because it is property involved in a transaction or attempted transaction in violation of section 1956 or 1957 of Title 18, or property traceable to such property. The Defendant Property also is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) because it is property that constitutes or is derived from proceeds traceable to a violation of 18 U.S.C.

1

§ 1343 (relating to wire fraud), a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1355(a), and *in rem* jurisdiction is proper under 28 U.S.C. § 1355(b).

3. Venue in this Court is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1391(b) because acts or omissions giving rise to the forfeiture occurred in the Northern District of Texas and a substantial part of the events giving rise to the forfeiture occurred in the Northern District of Texas.

## PARTIES

4. The Plaintiff is the United States of America.

5. The Defendant Property is $663,150.98 in U.S. Currency seized from JP Morgan Chase Bank, account ending in "9135," such account held in the name of Qishen Trading Limited. On March 27, 2024, acting pursuant to a federal seizure warrant, the United States Secret Service ("USSS") seized via electronic transfer the Defendant Property at 125 East John Carpenter Freeway, Suite 300, Irving, Texas, from JP Morgan Chase Bank who issued a cashier's check. The Defendant Property was then deposited into a Treasury U.S. Customs suspense account with the Federal Reserve Bank in New York, New York, where it is currently located.

## FACTS

6. The primary responsibilities of the USSS are protection and investigations to ensure the safety and security of protectees, key locations, and events of national

significance; to protect the integrity of the nation's currency; and to investigate crimes against the nation's financial system committed by criminals around the world and in cyberspace.

7. Investigators and special agents with the USSS are specially trained and learn by experience how to identify, investigate, and prevent criminal activity.

*Background of the Investigation*

8. In September 2023, the USSS began an investigation of a criminal money laundering syndicate operating cryptocurrency investment scams. In particular, the unknown scammers promoted spoofed domains and websites purporting to look like legitimate cryptocurrency trading platforms to U.S. based victims, including victims located in the Northern, Eastern, and Southern Districts of Texas. Scammers then fooled victims into "investing" in cryptocurrency through these fraudulent investment platforms, which instead allowed the scammers to steal the victims' money.

9. This type of scam is often identified as "Pig Butchering" and involves scammers spending significant time getting to know, targeting, and grooming their victims to gain their confidence. It is a type of romance scam, or confidence scam, that convinces victims to invest in non-existent cryptocurrency trading platforms. Romance scams target individuals looking for romantic partners or friendships on dating websites and other social media platforms. The scammers may create profiles using fictitious or fake names, locations, images, and personas, allowing the scammers to cultivate relationships with prospective romance scam victims. Romance scams aim to use the fictitious relationship

to obtain money or induce victims to conduct financial transactions on behalf of the scammers.

10. After developing a relationship and gaining trust, scammers instruct their victims to visit spoofed domains to get them to make significant capital investments in what victims believe are legitimate cryptocurrency trading platforms. The victims are then typically asked to invest their funds through a provided BTC, USDT, ETH, or USDC deposit address and are further told they can expect to receive a sizeable return on their investments. As initial smaller investments are made, the spoofed websites falsely display a significant increase in the victim's account balance, which entices the victim to continue making investments and typically ends with a final large deposit or transaction into a shell company account. When the victim attempts to make a withdrawal, the scammers attempt to coerce the victim to make additional investments. These tactics can include requesting additional investments due to "significant profits" gained on the account or other reasons such as freezing the account due to "taxes owed" or "suspicious behavior." Regardless of how the scammers attempt to solicit additional investments from the victims, the victims are unable to retrieve any portion of their investment.

11. As of September 19, 2023, the USSS had identified thirty-six victims who reportedly suffered losses as a result of this cryptocurrency investment scam. During the time frame of about February 28, 2022, to September 8, 2023, these victims reported a total loss exceeding $14,000,000.

*The Initial Tip*

12.     The USSS has been conducting an investigation involving victims across the United States, including a victim who resides in the Northern District of Texas, Abilene Division. Victims of this scheme report that when they attempt to contact "customer service" of various platforms, they are informed that in order to withdraw their funds they must pay a tax of up to 35%. It is at this point that most victims realize that they have been victimized.

13.     As part of their investigation, USSS special agents identified multiple accounts that have received proceeds of these investment scams through reports and from victims who stated they sent funds to multiple bank accounts under the impression they were investing in cryptocurrency. While investigating an account held in the name of Lingling Beauty Studio LLC, which had received cryptocurrency investment fraud proceeds, a victim provided additional information indicating that Qishen Trading Limited also was involved.

14.     During the investigation of Noble Trade USA Enterprises, the target of a seizure warrant issued by the Eastern District of Texas, a victim identified herein as "RG" was contacted. RG, a resident of Cincinnati, Ohio, remained in contact with the investment fraud group and was asked to provide additional funds to his "investment" account. RG was directed to submit funds to JPMorgan Chase Bank account ending in "9135" held in the name of Qishen Trading Limited. Thereafter, law enforcement opened an investigation into the Qishen Trading Limited account ending in "9135."

*Investigation of Qishen Trading Limited and Interviews with Fraud Victims*

15. Investigators determined that Qishen Trading Limited is based in Fresno, California. They learned from the California Secretary of State that Qishen Trading Limited was registered as a domestic business on June 5, 2023. Xiaoming Zhan was listed as the "incorporator" for the business with an address of 1526 W. Scott Avenue, Fresno, California, 93711. Qishen Trading Limited's type of business is "Trade."

16. Investigators contacted JP Morgan Chase Bank and also reviewed bank records for the Qishen Trading Limited account ending in "9135." The account was opened on October 17, 2023, by Xiaoming Zhan. Between October 30 and December 29, the account received $3,728,906 in deposits. Except for one transaction, all credits and deposits were whole dollar figures, which is unusual for a legitimate business. Most of the deposits were received via wire transfer from across the United States. The funds were then quickly transferred out of the account and into other bank accounts held in China. Additionally, there were no identifiable normal business transactions such as payroll, utilities, or other operational expenses identified in the account records.

17. Agents with the USSS have been able to identify and telephonically interview four victims who submitted funds to the "9135" account. These victims wired a combined $407,000.00 to the account. An additional six victims reported $625,650.00 in fraudulent activity via the Internet Crime Complaint Center. All the individuals who were interviewed stated that they were victims of fraud related to various investment schemes.

18. For example, investigators contacted an individual victim identified herein as "DB" of Abilene, Texas. DB stated he received a random text message on his phone

one day that led to a friendship with a woman he knows as Aimee Taylor. DB stated their conversations quickly moved to WhatsApp, and they began discussing investments related to spot-gold trading. DB was led to believe Taylor had an uncle who is a successful investor who provided "inside leads." DB stated he was provided multiple different business accounts to submit his investment funds through and was told that the funds must be deposited within a two-hour window. DB stated he was always being rushed to make the deposits. DB stated he never received any proof his funds were invested in spot-gold trading or any other legitimate investments; DB believes it was all a scam. DB stated when he attempted to make a withdrawal he was confronted and asked what he was doing, and he was told in order to make a withdrawal he would need to make a new deposit first. One of the accounts to which DB submitted a $75,000.00 wire was held in the name of Valur Holding LLC; this account is the subject of a separate seizure. DB submitted a wire for $42,000.00 to the Qishen Trading Limited account ending in "9135" on January 2, 2024. DB stated he was allowed to withdraw and keep only $100 from the account. DB stated he is a victim.

19.     Investigators contacted an individual victim identified herein as "DU" of Erie, Pennsylvania. DU stated he met a woman he knows as "Victoria" through a dating application. DU said Victoria introduced him to crypto-related investments. DU stated these communications were conducted through WhatsApp. DU confirmed that he sent a wire for $300,000.00 to the "9135" account on January 4, 2024. DU stated he is a victim as he is not allowed to withdraw any of his "investment funds."

20. Investigators contacted an individual victim identified herein as "SB" of Conroe, Texas. SB stated he believed he was investing in cryptocurrency and that he was a victim of a fraud scheme. SB confirmed sending a wire on January 3, 2024, for $40,000.00 to the "9135" account. SB stated that, shortly after submitting the wire, he requested his bank to issue a recall as he realized the investment was a fraud. SB stated he has deleted all his communications he had between the person with whom he was dealing, and he did not wish to provide any additional details.

21. The victims who were interviewed each reported being defrauded into believing they were investing in cryptocurrency or other technology products when in fact they were provided with links or information leading them to send funds to a criminal enterprise.

22. During the course of its investigation, the USSS obtained a federal seizure warrant for the Qishen Trading Limited account ending in "9135" on the basis that the funds in the account are proceeds of wire fraud or money laundering or are property involved in or traceable to property involved in money laundering transactions.

23. On March 27, 2024, the USSS served the seizure warrant on JP Morgan Chase Bank, and the Defendant Property—$663,150.98—was transferred to federal custody via a cashier's check.

24. The Defendant Property was deposited into a Treasury U.S. Customs suspense account with the Federal Reserve Bank in New York, New York, where it is currently located.

## FIRST CAUSE OF ACTION
## 18 U.S.C. § 981(a)(1)(C)
## (forfeiture of property related to wire fraud)

25. The United States of America reasserts all allegations previously made.

26. Under 18 U.S.C. § 981(a)(1)(C), any property that constitutes or is derived from proceeds traceable to an offense constituting a "specified unlawful activity," or a conspiracy to commit such offense, is subject to forfeiture to the United States of America.

27. Under 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1), wire fraud in violation of 18 U.S.C. § 1343 is a "specified unlawful activity."

28. The wire fraud statute, 18 U.S.C. § 1343, establishes criminal liability for

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

29. As set forth above, money was fraudulently obtained through misrepresentations sent via wire communications regarding a fraudulent cryptocurrency investment scheme, whereby money was then transferred via wire transfers from individuals in Texas, Ohio, and Pennsylvania to an entity in California.

30. As set forth above, the Defendant Property is property that constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1343. The Defendant Property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## SECOND CAUSE OF ACTION
## 18 U.S.C. § 981(a)(1)(A)
## (forfeiture of property related to money laundering)

31. The United States of America reasserts all allegations previously made.

32. Under 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property" is subject to forfeiture.

33. Under the money laundering statute, 18 U.S.C. § 1956, it is unlawful for any person to conduct or attempt to conduct a financial transaction that involves the proceeds of specified unlawful activity where the person knows the property involved in the financial transaction represents the proceeds of some unlawful activity, and where the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the specified unlawful activity.

34. Under 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1), wire fraud in violation of 18 U.S.C. § 1343 is a "specified unlawful activity" for purposes of the money laundering statute.

35. As set forth above, a financial transaction involving the proceeds of a specified unlawful activity (wire fraud) occurred when money was fraudulently obtained via wire transfers from individuals in Texas, Ohio, and Pennsylvania to an entity in California based on a fraudulent cryptocurrency investment scheme. The funds were then quickly transferred out of the account and into other bank accounts held in China in an attempt to conceal the nature, location, source, ownership, or control of the proceeds of the unlawful transactions.

36.     As set forth above, the Defendant Property is property involved in a financial transaction or attempted financial transaction in violation of 18 U.S.C. § 1956, or property traceable to such property, and, therefore, the Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## **REQUEST FOR RELIEF**

WHEREFORE, the United States of America respectfully asserts that the Defendant Property is forfeitable to the United States of America under 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

The United States of America further requests:

A. That, pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G(3)(b), the Clerk of the Court issue a Summons and Warrant of Arrest *in Rem* as to the Defendant Property;

B. That Notice of this action be given to all persons known or thought to have an interest in or right against the Defendant Property;

C. That a Judgment of Forfeiture be decreed against the Defendant Property;

D. That, upon the issuance of a Judgment of Forfeiture, the United States Marshals Service or its delegate be able to dispose of the Defendant Property according to law; and

E. That the United States of America receives its costs of court and all further relief to which it is entitled.

DATED this 1st day of August 2024.

        Respectfully submitted,

        LEIGHA SIMONTON
        UNITED STATES ATTORNEY

        */s/ John Penn*
        JOHN PENN
        Assistant United States Attorney
        Indiana Bar No. 28722-29
        1100 Commerce Street, Suite 300
        Dallas, Texas 75242
        Telephone: 214-659-8600
        Facsimile: 214-659-8805
        Email: john.penn@usdoj.gov

        ATTORNEY FOR PLAINTIFF

## VERIFICATION

I am a Special Agent with the United States Secret Service ("USSS").  As a Special Agent with USSS, my duties and responsibilities include participating in the investigation and prosecution of persons who violate federal laws.

I have read the contents of the foregoing Verified Complaint for Forfeiture *In Rem* and verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual statements contained therein are true and correct to the best of my knowledge and belief.

Executed this 1st day of August 2024.

Special Agent Adam Newman
United States Secret Service